Yitzchak Zelman, Esq.
California Bar No. 350053
MARCUS & ZELMAN, LLC
701 Cookman Ave, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
yzelman@marcuszelman.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DANNY MARTINEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSUNION RENTAL SCREENING SOLUTIONS, INC.,<br><br>Defendant. | Civil Case No.:<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Violations of the Fair Credit Reporting Act, 15 U.S.C. 1681e. |

Plaintiff Danny Martinez ("Plaintiff") brings this action on behalf of himself and all others similarly situated, seeking statutory and other damages against Defendant TransUnion Rental Screening Solutions, Inc. ("Defendant" or "TURSS") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a putative class action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following duty on consumer reporting agencies: consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports.

4. This not only encompasses a requirement that information contained in a consumer report not be factually incorrect, but further that any factually correct information provided not be so misleading to its intended user that it is objectively likely to cause an adverse action against its subject.

5. This is particularly relevant in the context of consumer reports used for the assessment for housing, as criminal record information can be a significant factor

impacting potential adverse action against a consumer applicant, causing devastating impacts on their ability to obtain a home.[1]

6. As such, the FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

7. Defendant has produced and sold consumer reports concerning Plaintiff's and the proposed Class members' backgrounds that wrongfully and misleadingly reported 1) a number of incomplete and unidentifiable criminal records on their consumer reports that lack any sufficient identifying information and 2) are not properly associated with these consumers.

8. As a result of TURSS' wrongful reporting, Plaintiff and the Class members' were damaged by, without limitation, suffering defamatory harm to their reputations, impediment to their ability to gain housing, and considerable stress and anguish.

9. Plaintiff, individually and on behalf of the Class members, seeks statutory and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

**PARTIES**

10. Plaintiff is a natural person and resident of the State of California and qualifies as a "consumer" as defined and protected by the FCRA.

---

[1] *See LA Times*, "We just keep punishing. Californians with criminal records still face housing barriers", Aug. 2, 2022, available at https://www.latimes.com/california/story/2022-08-02/californians-criminal-records-face-housing-barriers#:~:text=A%202020%20Los%20Angeles%20Times,more%20than%20a%20decade%20ago.

11. Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce.

12. Defendant is a Delaware corporation that maintains its primary place of business at 555 W Adams St, Chicago, IL 60661.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant regularly conducts business within the State of California and violated Plaintiff's rights under the FCRA in the State of California as alleged more fully below.

14. Jurisdiction is also proper pursuant to 28 U.S.C. § 1332(d)(2) as at least one member of the putative class and Defendant are citizens of different states and the amount in controversy exceeds $5,000,000.

15. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

# FACTUAL ALLEGATIONS

16. Prior to June 1, 2022, Plaintiff and his wife were applying for new apartments as their lease was set to expire at their current home. Around this time, Plaintiff applied for an apartment with M&M Byrant Real Estate ("M&M"). Plaintiff and his wife were assured based on their credit that they would qualify for this new home and so they gave notice to their landlord of vacating their unit.

17. On or around June 1, Plaintiff was informed by his new potential landlord that there was an issue with renting him an apartment due to the results of the consumer background report provided by Defendant.

18. The report provided to M&M by Defendant, dated June 1, 2022, indicated that Plaintiff **9** criminal records from San Bernardino Superior Court. Upon information and belief, these records were the basis for Plaintiff being denied housing.

19. Bewilderingly, each of the nine criminal records listed on the report contained no readily identifiable information. Aside from listing Plaintiff's name, year of birth and an "offense date,' each entry lacked a category, the offense itself, a disposition or disposition, or even a case number. Essentially, Defendant indicated that Plaintiff was a repeat criminal with no further information relating to any of these supposed offences.

20. Plaintiff has sincerely frustrated and embarrassed, as he has no criminal record with the San Bernardino Court, and these completely misleading and incomplete criminal records painted him in a derogatory and defamatory light.

21. Plaintiff explained the situation to his potential landlord, asserting that the near empty criminal records being reported were not his. However, his landlord indicated that until the background check errors were corrected, they would not be able to rent housing to Plaintiff and his wife.

22. Accordingly, Plaintiff called Defendant and asked for clarification on these various records. The representative for Defendant could provide no additional information regarding these supposed criminal records and indicated that Plaintiff would have to submit a formal dispute, forwarding him an email prompt to initiate such.

23. On or about June 3, 2022, Plaintiff initiated a dispute with Defendant, indicating that he has no criminal records with San Bernardino County and that these records with nearly no information were inaccurately being associated with him.

24. Being unable to move into their new unit, Plaintiff and his wife were put into the precarious position of attempting to extend with their current landlord until Defendant corrected its errors. Their landlord demanded prorated payments for the extended time, causing Plaintiff to suffer extreme distress, sleepless nights and anxiety as they worried about whether they would be rendered homeless as a result of Defendant's erroneous, incomplete and misleading reporting.

25. It was not until on or about June 16, 2022, that Defendant responded to Plaintiff's dispute, indicating that they had deleted all nine inaccurate records from Plaintiff's report. Despite not including them in its initial report, Defendant now identified the nine case numbers for the deficient records included on Plaintiff's report.

26. Upon reviewing these records on San Bernardino Superior Court online case search, it becomes apparent that these records are associated with a different Danny Martinez.

27. Just as confusingly, each case includes the relevant information such as the charge, the disposition, and broader case information; information that Defendant failed to include.

28. Because of the inaccurate and misleading information provided to his potential landlord by Defendant, Plaintiff was defamed and suffered significant distress as a result of the precarious situation that Defendant's failures caused.

29. It is patently inaccurate and/or materially misleading to report criminal records on Plaintiff's report that 1) do not belong to him and 2) contain nearly no identifying information (e.g. case number, disposition, sentence, etc.) for which any reasonable person could gleam anything other than an indication of criminality which will inherently have an adverse effect on that consumer.

30. Had Defendant not inaccurately and misleadingly reported unverifiable criminal records on Plaintiff's consumer report, Plaintiff would not have been defamed to his new landlord.

31. Upon information and belief, had Defendant not inaccurately and materially misleadingly reported unverifiable criminal records on Plaintiff's consumer report, Plaintiff would not have been forced to suffer the extreme distress associated with having

to attempt to extend at his previous apartment and the ensuing concern that they would be rendered homeless.

32. Upon information and belief, Defendant has furnished thousands, if not tens of thousands of other individual's consumer background reports where it included criminal records that contain nearly no verifiable information such as case numbers, dispositions, sentences, or anything that could reasonably inform the reader about what is being reported (or what may need to be disputed), other than the adverse implication of criminality.

33. As evident by the devastatingly incomplete and inaccurate records on Plaintiff's report, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to landlords.

34. It is further evident that Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides in its consumer background reports by the fact that it wrongly associated these fragmented records with Plaintiff despite them not belonging to him.

35. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information, even where that information is drastically and misleadingly incomplete, is more profitable than reporting less and potentially leaving information off of a consumer report.

36. For example, upon information and belief, Defendant allowed inaccurate and deficient records to appear on Plaintiff's consumer report without first confirming the accuracy with the actual court records, which are readily and publicly available.

37. Defendant regularly seeks out and procures court case information with the intention of including it in the consumer reports it sells for profit.

38. Defendant knows or has reason to know the effect a consumer's criminal record report on the assessment of their suitability for housing applications.

39. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own tenant screening products and it includes it in its reporting, including without important and necessary case information details.

40. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

41. Upon information and belief, Defendant fails to use sufficient identifiers to insure that the criminal record information it includes in its consumer reports is correctly associated with the consumer on whom the report concerns.

42. Defendant, a sophisticated tenant screening consumer reporting agency, is aware that criminal background information is often inaccurate or incomplete or capable of being associated with the wrong individual.

43. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

44. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

45. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

46. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

47. Upon information and belief, Defendant has been sued by consumers under the FCRA in the past for erroneous reporting.

48. Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

49. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

50. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

51. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports.

52. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

53. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

54. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

55. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

56. The injuries suffered by Plaintiff and the Class members as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

57. Defendant knows that its services are used to make significant consumer decisions.

58. Upon information and belief, Defendant know or should have known that landlords make housing decisions based solely on the information contained in its consumer reports.

59. Upon information and belief, Defendant knew or should have known the negative impact that reporting a consumer's inaccurate, incomplete and/or materially misleading criminal history was likely to have on that consumer's tenant status.

60. Upon information and belief, Defendant purchases public record information from third-party vendors.

61. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

62. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

63. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it procures consumers' information from often provides inaccurate, misleading, and incomplete records.

64. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

65. As a direct result of Defendant's conduct, Plaintiff and the Class members have been substantially hindered in their ability to gain housing and have been defamed by Defendant's inaccurate and complete reporting.

66. These injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate.

67. At all times pertinent hereto, TURSS' conduct was willful and/or negligent,

and carried out in reckless disregard for a consumer's rights as set forth under section 1681e of the FCRA. Accordingly, Plaintiff and the Class are entitled to statutory and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

68. As a direct and proximate result of the Defendant Equifax's willful and/or negligent refusal to assure maximum accuracy of consumer reports as mandated by the FCRA, Plaintiff and the Class members have been harmed in their daily lives, by the impact that defamatory harm ensuing from Defendant's fragmented reporting, as well as the damage to their ability to gain housing.

69. For example, Plaintiff's was wrongly painted as a criminal without any context to his new landlord and forced into the emotional distress of his two weeks in limbo where he suffered sleepless nights and anxiety due to the negative impact of Defendant's incomplete and inaccurate reporting. Plaintiff suffered emotional distress along with embarrassment, frustration and annoyance because of the Defendant's actions.

## CLASS ALLEGATIONS

70. Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated.

71. The Classes consists of the following:

**Improper Identification Class:** All natural persons residing in the United States on whom, from two years prior to the filing of this Complaint to the date a class is certified, TURSS furnished a consumer report containing criminal case record entries which do not belong to that person.

**Misleading Entry Class:** All natural persons residing in the United States on whom, from two years prior to the filing of this Complaint to the date a class

is certified, TURSS furnished a consumer report containing a materially deficient criminal case record entry.

72. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

73. Specifically excluded from the Classes are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

74. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. At this time, Plaintiff does not know the exact size of the Classes. Based on information and belief, the Classes iare comprised of at least hundreds, if not thousands or tens of thousands, of members who are geographically dispersed throughout the country so as to render joinder of all Class members impracticable. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

75. **Commonality.** Common questions of law and fact exist as to all members of the Clasess and predominate over the questions affecting only individual members. The primary common legal and factual questions are:

      a. Whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures in preparing and selling consumer reports;

      b. Whether Plaintiff and the Class members have been injured by Defendant's conduct;

      c. Whether Plaintiff and the Class members have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and if so, the proper measure and appropriate formula to be applied in determining such damages and restitution; and

      d. Whether Plaintiff and the Class members are entitled to declaratory and/or injunctive relief.

76. **Typicality**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that he seeks for absent Class members.

77. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex consumer and class-action litigation. Plaintiff's counsel have prosecuted complex consumer class actions across the country.

78. **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class

action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

79. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## COUNT I
**Violation of the FCRA, 15 U.S.C. § 1681e**
**On behalf of the Improper Identification Class**

80. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of the Improper Identification Class.

82. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

83. Accordingly, TURSS was required to follow procedures to assure maximum possible accuracy of the consumer reports it prepared concerning Plaintiff and the Class. This includes following procedures to prevent including criminal records on consumers' reports when the record is not attributable.

84. However, TURSS failed to do so.

85. Were TURSS to follow procedures to assure maximum possible accuracy of the credit report it prepared concerning Plaintiff and the Class members, it would not be possible for it to report the conviction history of a different individual on Plaintiff's and the Class members' reports.

86. Moreover, if TURSS were meeting its obligation to follow procedures to assure maximum possible accuracy of the credit reports it prepares for Plaintiff and the Class members, it would have prevented this inaccurate information from being reported

in the first place. In fact, TURSS' acknowledgement of its error is evidence itself of its failure to assure maximum possible accuracy.

87. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff and the Class have been harmed, as explained above.

## COUNT II
### Violation of the FCRA, 15 U.S.C. § 1681e
### On behalf of the Misleading Entry Class

88. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

89. Plaintiff brings this claim individually and on behalf of the Misleading Entry Class.

90. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

91. Accordingly, TURSS was required to follow procedures to assure maximum possible accuracy of the consumer reports it prepared concerning Plaintiff and the Class.

This includes following procedures to prevent facially inaccurate, incomplete and/or materially misleading criminal record information such as criminal record entries that include no identifiable and verifiable information in them.

92. However, TURSS failed to do so.

93. Were TURSS to follow procedures to assure maximum possible accuracy of the credit report it prepared concerning Plaintiff and the Class members, it would not be possible for it to report inaccurate, incomplete and/or materially misleading information such as including criminal case records with no information aside from an offence date on Plaintiff's and the Class members' reports.

94. Moreover, if TURSS were meeting its obligation to follow procedures to assure maximum possible accuracy of the credit reports it prepares for Plaintiff and the Class members, it would have prevented this inaccurate information from being reported in the first place. In fact, TURSS' acknowledgement of its error is evidence itself of its failure to assure maximum possible accuracy.

95. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff and the Class have been harmed, as explained above.

## DEMAND FOR JURY TRIAL

96. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

Dated: December 21, 2023

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC